Slip Op. 19-17

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DIAMOND SAWBLADES MANUFACTURERS' COALTION, et al.,<br><br>                   Plaintiffs,<br><br>BOSUN TOOLS, CO., LTD., et al.<br><br>                  Consolidated Plaintiffs,<br><br>CHENGDU HIUFENG DIAMOND TOOLS CO., LTD., et al.<br>                  Consolidated Plaintiffs,<br>       v.<br><br>UNITED STATES,<br><br>                   Defendant,<br><br>WEIHAI XIANGGUANG MECHANICAL INDUSTRIAL CO., LTD., e. al.,<br><br>                  Defendant-Intervenors | Before: Jane A. Restani, Judge<br><br>Court No. 16-00124 |

## OPINION AND ORDER

[Remanded for Commerce to reconsider its methodology in determining the all-others rate for the antidumping administrative review at issue.]

Dated: February 1, 2019

    Daniel B. Pickard, Maureen E. Thorson, and Stephanie M. Bell, Wiley, Rein & Fielding, LLP, of Washington, DC, for the plaintiff/defendant intervenor Diamond Sawblades Manufacturers' Coalition.

    Gregory S. Menegaz, James K. Horgan, and Alexandra H. Salzman, deKeiffer & Horgan, PLLC, of Washington, DC, for the consolidated plaintiffs Bosun Tools, Co., Ltd. and Bosun Tools Inc.

   Max F. Schutzman, Andrew B. Schroth, Andrew T. Schutz, Dharmendra N. Choudhary, Elaine F. Wang, Jordan C. Kahn, and Ned H. Marshak, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, for the defendant-intervenor Weihai Xiangguang Mechanical Industrial Co., Ltd., Ehwa Diamond Industrial Co., Ltd., and General Tool, Inc.

   Lizbeth R. Levinson, Ronald L. Wisla, and Brittney R. Powell, Fox Rothschild LLP, of Washington, DC, for the consolidated plaintiffs Chengdu Huifeng Diamond Tools Co., Ltd., Danyang Huachang Diamond Tools Manufacturing Co., Ltd., Danyang NYCL Tools Manufacturing Co., Ltd., Danyang Weiwang Tools Manufacturing Co., Ltd., Guilin Tebon Superhard Material Co., Ltd., Hangzhou Deer King Industrial and Trading Co., Ltd., Hong Kong Hao Xin International Group Limited, Jiangsu Inter-China Group Corporation, Jiangsu Youhe Tool Manufacturer Co., Ltd., Orient Gain International Limited, Pantos Logistics (HK) Company Limited, Qingyuan Shangtai DiamondTools Co., Ltd., Quanzhou Zhongzhi Diamond Tool Co., Ltd., Rizhao Hein Saw Co., Ltd., Wuhan Wanbang Laser Diamond Tools Co., Zhejiang Wanli Tools Group Co., Ltd., Jiangsu Fengtai Diamond Tool Manufacture Co., Ltd., and Jiangsu Fengtai Tools Co., Ltd.

   John J. Todor, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of Counsel on the brief was Paul K. Keith, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Restani, Judge: This action is a challenge to the Department of Commerce ("Commerce")'s remand redetermination of the final results of the antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China ("PRC"). Redetermination Pursuant to Court Remand Order in Diamond Sawblades Manufacturers' Coalition v. United States, Consol. Court No. 16-00124, Doc. No. 82 (Aug. 7, 2018) ("Remand Redetermination"). Plaintiffs and Consolidated Plaintiffs oppose Commerce's decision on remand to rescind the administrative review with respect to exporter Weihai Xiangguang Mechanical Industrial Co., Ltd. ("Weihai") and the subsequent use of the rate for the only remaining respondent, Jiangsu Fengtai Diamond Tool Manufacturing Co., Ltd. ("Jiangsu"), as the basis for calculating the all-others rate.[1]

---

[1] The court uses the statutory term "all-others rate," whereas Commerce often refers to the "separate rate" meaning the rate applicable to all unexamined companies, which also are not

BACKGROUND

The court assumes all parties are familiar with the facts of the case as discussed in Diamond Sawblades Mfr.'s Coalition v. United States, 301 F. Supp. 3d 1326 (CIT 2018). For the sake of convenience, the facts relevant to review of Commerce's remand redetermination are summarized below.

This opinion concerns Commerce's fifth periodic review of the antidumping duty order on diamond sawblades and parts thereof from the PRC covering the period of November 1, 2013, to October 31, 2014. 81 Fed. Reg. 38,673 (June 14, 2016) ("Final Results"). In its decision ordering remand, the court directed[2] Commerce to reconsider its decision denying U.S. Importer Robert Bosch Tools Corporation ("Bosch")'s request for withdrawal of its request for review of Weihai.[3] Diamond Sawblades, 301 F. Supp. at 1357–59.

---

deemed part of the Chinese government related entity. See 19 U.S.C. § 1673d(c)(1)(B)(ii); see also, Thuan An Production Trading and Service Co., Ltd. v. United States, Slip. Op. 18-152, 2018 WL 5794540, at n. 11 (CIT Nov. 5, 2018) (describing the applicability of the statutory language to administrative reviews).

[2] Relevant to this decision, Commerce requested the court to remand as to the "valuation of self-produced and purchased [Diamond Sawblades ("DSB")] cores in the calculation of Weihai's normal value" and "the margin for the separate rate respondents, as impacted by the foregoing." Diamond Sawblades, 301 F. Supp. at 1331. The court also ordered Commerce to more fully address Weihai's arguments concerning the calculation of surrogate truck freight due to an ambiguity regarding whether the term "Bangkok" in a report used by Commerce referred to the Port of Bangkok or the Port of Laem Chabang. Id. at 1347–49. On remand, Commerce agreed that the reference was ambiguous and decided to average the distances at issue. Remand Redetermination at 6–8. No party challenges this decision. Because Commerce rescinded the underlying review of Weihai, neither the valuation of Weihai's purchased core issue, nor the calculation of surrogate truck freight as it relates to Weihai's rate were addressed by Commerce on remand. Id. at 8.

[3] In this case, the 90-day deadline for withdrawal was March 23, 2015. Bosch did not file its request for withdrawal until April 8, 2015, sixteen days after the deadline and a day after Commerce circulated initial questionnaires. Remand Redetermination at 2–3.

In its remand redetermination, Commerce adjusted its freight calculation as instructed by the Court and accepted Bosch's late withdrawal request. Remand Redetermination at 8. As no other requests for review of Weihai remained, Commerce rescinded its review of Weihai leaving only a single mandatory respondent–Jiangsu. Jiangsu's rate was then used pursuant to 19 U.S.C. § 1677f-1(c)(2)[4] to set the all-others rate. Because the previous all-others rate had been a weighted average of Weihai and Jiangsu's rate, the final results rate was 29.76% while the remand redetermination rate was 56.67%. Remand Redetermination at 19–20.

Sixteen non-selected separate rate respondents appealed Commerce's decision to rescind Weihai's rate in the calculation of the all-others rate. See Consolidated Plaintiffs' Opposition to Commerce's Final Remand Determination, Doc. No. 87 ("Pl. Chengdu Br."). Consolidated Plaintiffs Chengdu ("Chengdu")[5] challenge Commerce's decision on remand to resort to the

---

[4] An exception to the general rule requiring Commerce to make individual weighted average dumping margin determinations, reads:

> (2) Exception If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—
>     (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
>     (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined. 19 U.S.C. § 1677f-1(c)(2).

[5] Although Jiangsu Fengtai Diamond Tool Manufacture Co., Ltd. and Jiangsu Fengtai Tools Co., Ltd. were consolidated plaintiffs in the initial challenge to this administrative review before the court, they do not oppose Commerce's final remand redetermination. Pl. Chengdu Br. at 1. There are two sets of Consolidated Plaintiffs. One set is made up of the sixteen of eighteen separate rate companies (excluding Jiangsu Fengtai Diamond Tool Manufacture Co., Ltd., and Jiangsu Fengtai Tools Co., Ltd.), which the Court will refer to as "Chengdu" after the name of the first-listed of the sixteen companies. The other set of consolidated plaintiffs is made up of two

"reasonableness test" in assessing Bosch's late withdrawal rather than the "extraordinary circumstances test." Pl. Chengdu Br. at 4–8. They argue that the Court of Appeals for the Federal Circuit (CAFC)'s decision in Glycine, while factually similar, does not have the same "legal predicate" as Commerce's original determination. Id. at 4–5. They argue that Commerce misinterprets how the new regulation 19 C.F.R.§ 351.302(c), adopted since Glycine, interacts with the older regulation 19 C.F.R. 351.213(d)(1). Id. at 6–7.

Consolidated Plaintiffs Bosun ("Bosun") argue that Commerce's initial selection of only two mandatory respondents and the resulting use of only Jiangsu's rate in setting the all-others rate was unsupported by substantial evidence. Bosun's Comments in Opposition to U.S. Department of Commerce's Remand Redetermination, Doc. No. 86, 3–7 ("Pl. Bosun Br."). Bosun then proposed several alternatives to using Jiangsu's rate alone, including: use of Weihai's assessed rate despite its review having been rescinded, assigning Bosun its rate from the administrative review immediately prior to the instant review, or calculating an individual rate for Bosun on remand. Pl. Bosun Br. at 8–15. Finally, Bosun argues that an exhaustion bar does not apply as the issue now before the court did not arise until the remand redetermination. Id. at 15–17.

In response, the Government and Plaintiffs/Defendant-Intervenors Weihai and Diamond Sawblade Manufacturers' Coalition ("DSMC") argue in support of Commerce's decisions to rescind the review of Weihai and to base the all-others rate on Jiangsu's calculated dumping margin. Defendant's Response to Comments on Remand Redetermination, Doc. No. 89, 5–17 ("Def. Br."); Weihai's Comments in Support of Final Results of Redetermination Pursuant to

---

separate rate companies—Bosun Tools, Co., Ltd. and Bosun Tools Inc.—which the court will refer to as "Bosun."

Court Order, Doc. No 88, 5–9 ("Weihai Br."); Response on Remand of Plaintiff/Defendant-Intervenor DSMC, Doc. No. 90, 6–13 ("DSMC Br."). The Government and Defendant-Intervenors defend Commerce's choice to apply the reasonableness test found in 19 C.F.R. § 351.213(d)(1), instead of the extraordinary circumstances test found in 19 C.F.R.§ 351.302(c), to the withdrawal request as the correct interpretation of its regulations because the former provision concerns the specific instance at hand while the latter is a generally-applicable provision. Def. Br. at 6–8; see also Weihai Br. 7–9; DSMC Br. at 7–8. Further, the Government stresses that nothing in 19 C.F.R. § 351.302(c) purports to modify or supersede 19 C.F.R. § 351.213(d)(1). Def. Br. at 8–9. DSMC additionally argues that applying 19 C.F.R.§ 351.302(c) to the instant case would "render[] the final sentence of 19 C.F.R. § 351.213(d)(1) superfluous." DSMC Br. at 7.

The Government argues that Commerce's decision to base the all-others rate on the sole remaining mandatory respondent, Jiangsu, was in accord with its practice and regulations and that Commerce was not required to use Bosun's proposed alternatives. Def. Br. 9–17. Finally, the Government argues that if Bosun wanted an individual examination, it should have sought individual review as a mandatory or voluntary respondent in the underlying administrative review and that any requests for such review now should be rejected. Id. at 16–17. DSMC further argues that Bosun failed to exhaust administrative remedies. DSMC Br. at 9–11.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. 1581(c). The court will uphold Commerce's decision in an antidumping review unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

6

# DISCUSSION

## I. Application of the Reasonableness Test to Withdrawal of Review Requests

The legal landscape of Commerce's choice to apply a reasonableness standard begins with Glycine & More, Inc., v. United States. 880 F.3d 1335 (Fed. Cir. 2018). In that case, Baoding Moantong ("Baoding") and GEO Specialty Chemicals Inc. ("GEO") each requested review of an antidumping order on glycine from the PRC. GEO then filed a notice of withdrawal. Id. at 1341. Baoding then filed a similar request and a request for extension of time. Id. Baoding, however, submitted its notice of withdrawal after the 90-day deadline to withdraw a request for review as established in 19 C.F.R. § 351.213(d)(1).

Commerce denied Baoding's withdrawal pursuant to a 2011 guidance document (which Commerce refers to as a Notice) that stated that such untimely requests would be granted only in "extraordinary circumstances." Id. This Notice was not issued through notice and comment rulemaking but was merely an interpretation of 19 C.F.R. § 351.213. Id. at 1342, 1345. The CAFC determined that the Notice was an "incompatible departure from the clear meaning of the regulation," which states:

> (d) Rescission of administrative review—
>
> (1) Withdrawal of request for review. The Secretary will rescind an administrative review under this section, in whole or in part, if a party that requested a review withdraws the request within 90 days of the date of publication of notice of initiation of the requested review. The Secretary may extend this time limit if the Secretary decides that it is reasonable to do so.

19 C.F.R. § 351.213(d)(1)(emphasis added).

Rather than an "extraordinary circumstances test," the CAFC found that the regulation provides Commerce with wide discretion to use a "reasonableness test" in deciding whether to

extend a deadline for filing a withdrawal notice. Glycine, 880 F.3d at 1345. Thus, the CAFC affirmed this court's decision to remand the issue to Commerce for it to use the reasonableness test. At base, the case stands for the proposition that Commerce cannot "effectively rewrite the substantive meaning of [a regulation] without going through the necessary notice and comment rulemaking." Id.

The instant case appears to be very similar to the factual situation in Glycine: multiple parties submitted requests for review, all parties withdrew their requests on time save for one who withdrew a few days late, and Commerce similarly denied the withdrawal after applying the extraordinary circumstances test. But here, as Chengdu points out, Commerce initially relied on a regulation passed through notice and comment after Glycine that codified the extraordinary circumstances test into section 351.302. See Diamond Sawblades and Parts Thereof from the People's Republic of China: Denial of a Late Withdrawal of Review Request A-570-900, P.R. 133 at 3–4 (May 12, 2015). The regulation took effect on October 21, 2013, before the start of this administrative review, and states that "[a]n untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists." 19 C.F.R. § 351.302(c). The notice published alongside the final rule appears to indicate that this regulation applies to all time limits in antidumping and countervailing duty proceedings. 78 Fed. Reg. 57,790, 57,791 (Sept. 20, 2013). Notably, however, the regulation does not specifically mention or modify 19 C.F.R. § 351.213(d).

The parties rely on conflicting canons of statutory interpretation regarding Commerce's choice to apply the reasonableness test found in 19 C.F.R. § 351.213(d). In its brief, Chengdu argues that the two provisions at issue must be read together because subsection 351.302(c) applies to all of section 351. Chengdu Br. at 6–8. By contrast, the Government argues that the

more specific regulation–19 C.F.R. § 351.213(d), as it specifically concerns the withdrawal of requests for review–should control. Def. Br. at 7–8.[6]

The court applies the same rules to interpret a regulation as it does to interpret a statute. See Roberto v. Dep't of Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006). If a regulation is unambiguous, the court enforces the clear terms of the regulation and no attention need be paid to an agency's interpretation. Id. If, however, a regulation is ambiguous, then the court defers to an agency's reasonable and well-considered interpretation of its own regulation. See Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 159 (2012); Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal citations omitted).

Neither of the regulations at issue clarifies how these two provisions are meant to interact. The Federal Register notices of initiation and the one published alongside the final version of section 351.302 are similarly unavailing. See 78 Fed. Reg. 3,367 (Jan. 16, 2013) ("Proposed Rule"); 78 Fed. Reg. 57,790 (Sept. 20, 2013) ("Final Rule"). Without clear guidance, Commerce reasonably decided to apply the regulation it found to be more specific to the issue of a withdrawal of a request for review, 19 C.F.R. § 351.213(d). See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992) (noting that "it is commonplace of statutory construction that the specific governs the general"); see also Green v. Bock Laundry Mach. Co., 490 U.S. 504, 524–26 (1989); Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 444–45 (1987). Additionally, this choice allows Commerce the flexibility to accept a withdrawal prior to

---

[6] The court in its first remand decision did not address the potential conflict in regulations but directed a reconsideration of the proper withdrawal standard in the light of Glycine. See Diamond Sawblades, 301 F. Supp. at 1356–59. On remand, however, Commerce is not applying the reasonableness test under protest, but has now embraced it as the proper test in considering untimely-filed withdrawals of review requests under the more specific regulation 19 C.F.R. § 351.213(d). See Remand Redetermination 17–18; Def. Br. at 5–9.

conducting a potentially lengthy and resource-intensive review that perhaps no party desires. Commerce's interpretation passes the deferential test established by the Supreme Court. Accordingly, the court sustains Commerce's use of the reasonableness test in addressing untimely withdrawals of requests for review.

The court notes that there is no right not to be subject to review or individual examination. If all parties are content to rely on past rates, Commerce need not conduct a review. See 19 U.S.C. § 1675(a). If a review is commenced, permitting withdrawal of previously filed requests for review is purely for the convenience of Commerce and the parties. Commerce need only act with reason. If it decides in the reasonable exercise of its discretion to continue the review or examine particular parties, it may do so whether the parties wish it or not.

II.   **Whether Commerce's Decision to Rescind Review of Weihai is Supported by Substantial Evidence**

As noted above, Glycine's holding does not apply to the initial decision here to use the extraordinary circumstances test. The decision does, however, provide some guidance on what is considered a reasonable withdrawal request that is useful to the court's analysis under the standard now applied. In Glycine, the CAFC found that the criteria for determining whether or not it is reasonable to accept a withdrawal "reflects concerns for not wasting departmental resources, for giving parties an opportunity to know the results of prior administrative reviews when applicable, and for not conducting undesired reviews, among other considerations." 880 F.3d at 1340. In this instance, Bosch sought to withdraw its request for review of Weihai shortly after becoming aware that all other parties had withdrawn their requests, the request was made only sixteen days after the time limit lapsed and only a day after receiving the questionnaire, and Commerce had not yet expended significant resources in conducting the review. Remand

Redetermination at 5–6. In other circumstances, these facts might be enough for Commerce to find it reasonable to accept the withdrawal. Here, however, exceptional circumstances make Commerce's decision to rescind Weihai's review, without taking any other action, not reasonable.

This case is sui generis for several reasons. On remand Commerce was in the unique position of deciding whether or not to rescind the administrative review of Weihai after it had already completed a full individual examination of Weihai.[7] This is significant, in part, because the resulting rate for Weihai was drastically different from that of the single other selected mandatory respondent, Jiangsu.

This difference should have alerted Commerce that using only Jiangsu's rate in calculating the all-others rate was not likely to result in a rate that reflected a properly selected weighted average rate required to be applied to all other non-examined companies. See 19 U.S.C. § 1673d(c)(5).[8] Given the drastic difference between the rates of Jiangsu and Weihai—originally 61.48% and 21.67%, respectively[9]—it was not reasonable for Commerce to rescind the review of

---

[7] Because Commerce now knows under which standard to assess late withdrawal requests, future cases in which Commerce rescinds a review after having already made a final determination should not occur. Here, however, Commerce cannot ignore evidence that may undermine the purported representativeness of Jiangsu's rate and rely on only that rate in setting the all-others rate.

[8] This section, in relevant part, reads:

> For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.
> 19 U.S.C. § 1673d(c)(5)(A).

[9] As Bosun also notes, Weihai is the significantly larger exporter of the two which resulted in a weighted average of 29.76% for the all-others rate. Bosun Br. at 8; Diamond Sawblades and

Weihai without some other action, such as selecting another mandatory respondent to take its place. See Final Results at 38,674. By rescinding Weihai's review Commerce was left with only a single rate that the record showed was not likely representative of an appropriate antidumping duty all-others rate.

Commerce has a duty to calculate a rate to be applied to non-examined parties that is based on some fair sample or large part of the exporter and producer pool. 19 U.S.C. § 1677f-1(c)(2). Because of the peculiarities of this case, Commerce should have known it likely was not making a representative selection and was rather choosing an unreliable rate. Here, the choice to rescind the review of Weihai paired with the decision to not select a substitute mandatory respondent, in the light of the difference in the rates assessed against Weihai and Jiangsu, was not supported by substantial evidence.[10] See D&L Supply Co. v. U.S., 113 F.3d 1220, 1224 (Fed. Cir. 1997) (where circumstances have changed over time, holding that relying "on margins that have been demonstrated to be inaccurate is irrational.").

### III. Bosun's Exhaustion of Administrative Remedies

---

Parts Thereof from the PRC: Selection of Respondents for Individual Examination, A-570-900, P.R. 113 at Attach. CBP Data (Apr. 7, 2015).

[10] Given the relative likelihood that Commerce may have to drop a mandatory respondent's rate when calculating the all-others rate–for example, if the calculated rate is de minimus or based entirely on adverse facts pursuant to 19 U.S.C. § 1673d(c)(5)–Commerce's decision to select only two mandatory respondents to review at the onset creates a situation in which this problem is likely to occur. Although a resulting all-others rate based on only a single mandatory respondent may not always be problematic, it increases the likelihood of an unreliable rate and opens Commerce to litigation. See Soc Trang Seafood Joint Stock Co. v. United States, 321 F. Supp. 3d 1329, 1346–48 (CIT 2018) (finding that in certain instances determining the all-others rate on the basis of only one mandatory respondent is permissible as "[t]he loss of a respondent does not automatically mean that the resulting all-others rate is not representative.")  As noted here, however, the record indicates that the resulting single rate may not be representative of a reasonably accurate dumping margin for all-others.

The court is unpersuaded by the failure to exhaust arguments raised by the Government[11] and DSBC.  Def. Br. at 16–17; DSMC Br. at 9–11. The relevant statute requires that the court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The court concludes that requiring exhaustion in this instance would not have been sensible. Bosun did not have an issue with the selected mandatory respondents, or the resulting all-others rate, until after one of the two mandatory respondent's review was rescinded. To find a failure to exhaust here would require Bosun to predict that a party would object to the inclusion of Weihai after it was already selected as a mandatory respondent; that either Commerce on its own or at the direction of the court would rescind its review; that Commerce would decide not to substitute Weihai with another respondent; and that it would set the all-others rate based solely on Jiangsu's rate. Requiring Bosun to predict that series of events violates basic tenets of notice and fairness.

This case differs from the situation at issue in Boomerang Tube LLC v. United States. 856 F.3d 908 (Fed. Cir. 2017). In that case, plaintiffs were on notice prior to the preliminary determination that the concerned data was submitted to Commerce and they had the ability to object to its potential use. Id. at 913. Here, in contrast, it was not until after the final results were issued, the issue was appealed and remanded, and Commerce had made its remand redetermination that Bosun was made aware that Commerce would only be utilizing Jiangsu's rate in determining the all-others rate. Bosun would have had to address the issue long before it was ripe or even knowable. Because that is impractical, the court will not require it.

---

[11] The Government claims that Commerce is not arguing that Bosun failed to exhaust administrative remedies but that "Bosun's failure to seek individual review as a mandatory or voluntary respondent until its administrative case brief prevented Commerce from acting upon these arguments with the deadlines of the administrative review." Def. Br. at 17. This functionally amounts to a failure to exhaust argument and so the court treats it as such.

## CONCLUSION

For the foregoing reasons, the court concludes Commerce's decision to use only Jiangsu's rate in setting the all-others rate was not supported by substantial evidence. The court sees nothing in the record to support the choice of Jiangsu's rate as an appropriate all-others rate but does not preclude Commerce from choosing it if it has such evidence. Accordingly, the court remands the matter to Commerce to withdraw the rescission of review as to Weihai;[12] choose a suitable substitute mandatory respondent; or use any other record evidence to devise a fair, equitable, and reasonably accurate all-others rate.[13] If Commerce does not reopen the record, it shall file its remand redetermination with the court within 60 days of this date and all other parties shall have 30 days thereafter to file comments on the remand redetermination. If Commerce decides to reopen the record, it shall advise the court of the schedule needed for its redetermination.

    /s/ Jane A. Restani
Jane A. Restani, Judge

Dated: February 1, 2019
      New York, New York

---

[12] If Commerce withdraws its recision of the review as to Weihai, it would be required to make appropriate adjustments in line with the court's previous remand order regarding the valuation of Weihai's self-produced steel cores and the calculation of surrogate truck freight. See Diamond Sawblades, 301 F. Supp. at 1330, 1347–49.

[13] The concern here is inaccuracy and therefore unfairness to the non-examined parties. Jiangsu no doubt prefers its competitors to receive the same rate as it does. It is not entitled to such relief. Weihai might have received a very beneficial rate if eliminated from the review but it is not unfair to give it a rate based on its own data. There is the possibility of calculating a rate to be used based on Weihai's data but still permitting it to withdraw from the review. That peculiar remedy has not been considered by Commerce. The court leaves it to Commerce to select the remedy in the first instance bearing in mind fairness to all parties and the need to avoid unintended competitive benefits among the foreign parties.